IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| WES MORGAN and | : | |
| LESLIE MORGAN, | : | |
| | : | |
|    Plaintiffs, | : | |
| | : | |
| vs. | : | 4:03-CV-88-1 (CAR) |
| | : | |
| U.S. XPRESS, INC., | : | |
| | : | |
|    Defendant. | : | |

_____

## *ORDER ON MOTION TO STRIKE AND MOTION TO QUASH*

Before the Court are Defendant's Motion to Strike Plaintiffs' Expert Witness Designations and Adjust the Cost of Depositions [Doc. 106] and Defendant's Motion to Quash Plaintiffs' Tenth Supplement to Initial Rule 26 Disclosures [Doc. 109]. For the reasons discussed below, Defendant's Motion to Strike [Doc. 106] is **GRANTED IN PART and DENIED IN PART** and Defendant's Motion to Quash [Doc. 109] is **GRANTED**.

## I.    Defendant's Motion to Strike [Doc. 106]

### A.    Background

This case involves a motor vehicle accident between Plaintiff Wes Morgan's semi-oil tanker and a semi-truck of disputed identity. The accident at issue occurred on February 11, 2003 in Talbot County, Georgia. Shortly after the accident, Plaintiffs came to believe that the unidentified semi-truck belonged to Defendant, U.S. Xpress. Plaintiffs notified Defendant of the accident on May 10, 2003, and Defendant denied that any of its trucks were involved. Plaintiffs subsequently filed the present lawsuit against Defendant in June 2003.

Through the course of discovery, Plaintiffs sought information that would enable them to identify the U.S. Xpress truck allegedly involved in the accident. Plaintiffs discovered that U.S. Xpress, like many trucking companies, monitors the geographic location of its trucks using a satellite positioning system. Plaintiffs requested that Defendant produce truck positioning data from the date of the accident. Defendant declined to produce this data, claiming that any information recorded on its system on the date of the accident would have been routinely purged fourteen days later, on February 25, 2003, and therefore was unavailable in May and June 2003 when Defendant was notified of the accident and when it was served with the present lawsuit.

Plaintiffs theorize that this information was available to Defendant at least in May and June 2003, if not during the time Plaintiffs were seeking it through discovery. Plaintiffs contend that Defendant intentionally hid or destroyed the information, refused to produce it, and misled the Court about its availability. One of the central issues in this case, then, is whether Defendant had the ability to access and retrieve truck positioning data from its satellite tracking system.

To support their contentions, Plaintiffs offer the testimony of four witnesses: Jim Coppinger, Kevin R. DeBinder, Jim Clerc, and Kenneth Michael Schulz. Each is a former information technology employee of Defendant or its affiliates. Plaintiffs designated these witnesses as expert witnesses in accordance with Rule 26 of the Federal Rules of Civil Procedure.

Defendant deposed each of the witnesses and paid the requested expert fees. Defendant now seeks to strike Plaintiffs' Rule 26 designations on the grounds that these four witnesses are purely "fact witnesses" rather than "expert witnesses" within the meaning of Rule 26.[1] Additionally, Defendant seeks to recover the fees paid to each witness on the grounds that the amount paid is

---

[1] Defendant does not raise the issue of whether the witnesses are qualified to provide expert testimony pursuant to Rules 702, 703, and 705 of the Federal Rules of Evidence.

greatly above the amount due to a "fact witness."

As primary evidence that the witnesses are purely fact witnesses, Defendant offers the witnesses' admissions that their testimony is based on personal knowledge.  Defendant also cites Jim Coppinger's statement that his testimony relates to "facts....not opinions....[but] facts," and points to a remark by Plaintiffs' counsel suggesting that Coppinger's testimony is not opinion testimony.    After considering the applicable law, the experts' affidavits and resumes, excerpts of their deposition testimony provided by Defendant, and the live testimony of Jim Coppinger and Kevin DeBinder given during a hearing on Plaintiffs' Motion for Sanctions, the Court now turns to the merits of Defendant's Motion to Strike.

### B.    Expert and Fact Witnesses Under the Federal Rules

Rule 26 of the Federal Rules of Civil Procedure and Rules 701, 702, and 703 of the Federal Rules of Evidence distinguish between "lay" or "fact" witnesses and expert witnesses.  Among other differences, the two are subject to different disclosure requirements, and expert witnesses are entitled to receive a "reasonable fee" rather than the $40.00 per diem statutory fee provided to lay witnesses.  Fed. R. Civ. P. 26(a)(2) & (b)(4); 28 U.S.C. § 1891.

Rule 26 references the Federal Rules of Evidence to identify which witnesses are expert witnesses.  See Fed. R. Civ. P. 26(a)(2)(A) & 1993 advisory committee's note (explaining that the term "expert" refers to "those persons who will testify under Rule 702 of the Federal Rules of Evidence  with respect to scientific, technical, and other specialized matters").  The Federal Rules of Evidence define a fact witness as one whose testimony is rationally based on his perception.  See Fed. R. Evid. 701.  In contrast, the rules define experts by reference to their knowledge, skill, or training.  See Fed. R. Evid. 702.  Further, they define expert testimony by looking at whether the

opinions offered draw on that expertise.  <u>See</u> Fed. R. Evid. 703.

While the Eleventh Circuit has not specifically addressed the criteria necessary to determine whether a particular witness is a "fact witness" or an "expert witness" under Rule 26, courts in other jurisdictions consistently have held that a witness is not an expert witness merely by virtue of his specialized training and knowledge in a particular field.  <u>Fisher v. Ford Motor Co.</u>, 178 F.R.D. 195, 197 (N.D. Ohio 1998); <u>accord</u> <u>Sipes v. United States</u>, 111 F.R.D. 59, 61 (S.D. Cal. 1986).  Instead, a witness with specialized knowledge and training may be a pure "fact witness" when a witness is a direct participant in the events about which he is testifying. <u>Gomez v. Rivera Rodriguez</u>, 344 F.3d 103, 113 (1st Cir. 2003).  However, if the testimony consists of "opinions based on scientific, technical, or other specialized knowledge," the opinions may be considered expert testimony, regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation.  <u>Musser v. Gentiva Health Servs.</u>, 356 F.3d 751, 757 n.2 (7th Cir. 2004) (distinguishing cases holding that a treating physician is not an expert witness if his or her testimony is based on observations made during treatment).  Thus, to determine whether a particular witness is a "fact witness" or an "expert witness" under Rule 26, a court should look to the nature of the testimony being given.  <u>Gomez</u>, 344 F.3d at 113 ("[T]he triggering mechanism for application of Rule 26's expert witness requirements is not the status of the witness but rather the essence of the proffered testimony.").

### C.     Classification of Witnesses

#### 1.     Jim Coppinger

Having reviewed Coppinger's affidavit and the portions of his deposition testimony provided to the Court, it is clear that Coppinger's testimony is sufficiently based on his technical knowledge

of fleet tracking systems in general, and Defendant's system in particular, to classify him as an expert witness.  Coppinger opined that, contrary to Defendant's contentions, the truck positioning data was not purged from Defendant's computer system fourteen days after the data was recorded. He also opined that Defendant would have retained a back-up of the data from the date in question and could have accessed that data from the back-up tapes it maintains.  Finally, Coppinger gave his opinion about other information Defendant could have used to determine the locations of U.S. Xpress trucks on the date of the accident.

Coppinger's opinion is based on his years of experience working with computer systems in the fleet tracking industry.  He is the co-inventor and patent-holder of a truck communications system.  He also was the "architect of the [U.S. Xpress] computer system" and was responsible for converting the system to the type of AS/400 system Defendant uses today.  In his affidavit, Coppinger offers an extensive explanation of "how the system really works."  Furthermore, in his deposition, he responded to several hypothetical questions posed by defense counsel about how data and codes would be interpreted.  Accordingly, Coppinger's testimony is based on his "scientific, technical, [and] specialized knowledge" about how fleet tracking systems generally operate, and about how Defendant's system, in particular, operates.

Though he has personal knowledge of Defendant's computer system as the "architect" of that system, Coppinger's testimony is based on his understanding of "how the system really works" rather than on his personal experience in accessing the particular data at issue in this case. Furthermore, his testimony likely will assist the jury in understanding the complex computer issues and terminology in this case.  Consequently, Defendant's Motion to Strike Plaintiffs' designation of Jim Coppinger as an expert witness is **DENIED**.

### 2.       Jim Clerc

Like Jim Coppinger, Jim Clerc is properly classified as an expert witness.  Clerc opined that Defendant could have accessed and produced the electronic tracking data and satellite positioning data for every truck in its fleet on the dates in question.  He also gave his opinion as to  the type of data that would have been saved to the back-up tapes.

Clerc's opinions are based primarily on his years of experience with Defendant's `computer system and his knowledge of computer systems in general.  Clerc designed and developed numerous satellite tracking applications while employed by Defendant.  He also was responsible for creating the satellite tracking and messaging database file in Defendant's computer system.

Though Clerc's affidavit contains factual assertions about the instructions he was given by U.S. Xpress executives in setting up Defendant's computer system, this testimony does not defeat his classification as an expert witness.  Clerc's opinions are based on his specialized knowledge and understanding of the inner-workings of Defendant's computer system rather than on his particular experience in accessing and retrieving the specific data at issue in this case.  Consequently, Defendant's Motion to Strike Plaintiffs' designation of Clerc as an expert witness is **DENIED**.

### 3.       Kevin DeBinder

Kevin DeBinder is more properly designated as a fact witness rather than an expert witness.  In May and June 2003, when Defendant first learned of the accident and the lawsuit, DeBinder was working on a project for U.S. Xpress that required him to access, retrieve, and analyze satellite positioning data from the U.S. Xpress system.  He opined that the truck positioning data was not routinely purged from Defendant's system fourteen days after the accident.  His opinion is based on his experience accessing and using the satellite positioning data contained in U.S. Xpress's

databases.  More specifically, it is based on the fact that he had accessed satellite tracking data older than fourteen days from Defendant's system on previous occasions.

While DeBinder has excellent professional credentials, including a computer science degree and over twenty years of experience as a computer programmer and systems analyst, his knowledge and experience does not form the basis of his testimony in this case.  Furthermore, though DeBinder, like Coppinger, explained some of the technical aspects of the U.S. Xpress computer system, his opinions are not based on any technical or specialized knowledge of its inner-workings. Instead, they are based on the fact that he previously had accessed similar data that was older than fourteen days during the relevant time period.

Because DeBinder's opinion is based primarily on the fact that he previously accessed similar data from Defendant's computer system, he is a fact witness, not an expert witness. Consequently, Defendant's Motion to Strike is **GRANTED** as to Kevin DeBinder.

### 4.      Kenneth Michael Schulz

Kenneth Michael Schulz also is more properly designated as a fact witness rather than an expert witness.  Like DeBinder, Schulz worked on a project for U.S. Xpress that required him to access, retrieve, and analyze satellite positioning data stored in the U.S. Xpress computer system. Schulz opined that satellite positioning data older than fourteen days was available for viewing on Defendant's computer system in May and June 2003.  His opinion is based on  the fact that he had accessed data older than fourteen days on previous occasions.

Because Schulz's opinion is based on the fact that he had access to the satellite tracking system, he must be considered a fact witness rather than an expert witness.  Consequently, Defendant's Motion to Strike is **GRANTED** as to Kenneth Michael Schulz.

D.     **Amount of Witness Fees**

Having determined that DeBinder and Schulz are fact witnesses rather than expert witnesses for the purpose of Rule 26, the Court must now consider whether Defendant is entitled to a refund of the money paid to those witnesses in excess of the witness and mileage fees they were entitled to receive as fact witnesses under 28 U.S.C. § 1821.

Under 28 U.S.C. § 1821, fact witnesses are entitled to receive only reasonable compensation for their time and expenses.  This includes a per diem allowance of $40.00 and actual reasonable travel expenses.  While 28 U.S.C. § 1821 sets forth the minimum amount a fact witness is entitled to receive, there is nothing in the statute prohibiting the parties from agreeing to pay a higher amount.  See Baker v. Taco Bell Corp., 163 F.3d 348, 352 (D. Colo. 1995).

Under the statute, Defendant was required to pay only the $40.00 per diem allowance and actual reasonable travel expenses to DeBinder and Coppinger.  Prior to their depositions, however, Defendant agreed to pay them more.  Defendant agreed to pay DeBinder and Schulz $300.00 per hour before the depositions were taken, and provided them with a check before the deposition began.

Though Defendant now claims that its counsel asked Plaintiffs' counsel to strike DeBinder and Schulz as experts during a telephone meeting with Plaintiff's counsel one day before the depositions were scheduled, Defendant did not raise the issue with the Court at that time.  In the majority of cases involving a challenge to the amount of fees payable to a witness, the challenge was mounted before the deposition occurred or before payment was made.  See, e.g., Fisher v. Ford Motor Company, 178 F.R.D. 195, 196-97 (N.D. Ohio 1998); Baker, 163 F.R.D. at 349.  Defendant has cited no case in which a court adjusted the amount of fees retroactively after the court determined a witness was a lay witness rather than an expert.  In its own research, this Court found

only one case in which a court did so, and in that case counsel objected to the amount of the fees requested by the witness before the witness was deposed. DeMar v. United States, 199 F.R.D. 617, 617-18 (N.D. Ill. 2001).      Defendant's discontent with the amount of the witness fees should have been brought to the attention of the Court before the witnesses were deposed.  By the time Defendant agreed to the $300.00 hourly rate, it had received the witnesses' resumes and had enjoyed ample opportunity to review them to determine whether an objection was warranted. With one simple telephone call to the Court, the matter easily could have been resolved before the depositions were taken.  By moving forward with the depositions and paying the fees they agreed to pay, Defendant waived its objection to the amount of the fees. Cf. New York v. Solvent Chem. Co., 210 F.R.D. 462, 470 (W.D.N.Y. 2002) (noting that party could have requested a postponement of deposition if it felt that it did not have adequate time to determine reasonableness of fees requested by witness).  Defendant cannot now complain of something that easily could have been resolved before the depositions took place.  See id.

        Defendant argues that the amount should be reduced as a sanction for Plaintiffs' discovery abuse.  More specifically, Defendant argues that Plaintiffs abused the discovery process by suggesting the $300.00 hourly rate to its witnesses.  Merely suggesting a fee amount to a witness does not amount to the willful misconduct or bad faith that normally warrants the imposition of a sanction.  See generally, e.g., Malautea v. Suzuki Motor Co., 987 F.2d 1536 (11th Cir. 1993) (imposing various sanctions when counsel intentionally provided misleading information to, and withheld information from, opposing party).  Plaintiffs did not abuse the discovery process by suggesting an hourly rate to witnesses whom it believed were expert witnesses based on their substantial experience in the computer programming field.  Consequently, the Court refuses to order

Plaintiffs to reimburse Defendant for the amount Defendant agreed to pay DeBinder and Schulz.

## II.    Motion to Quash [Doc. 109]

Defendant  moves the Court to quash Plaintiffs' tenth supplement to its Rule 26 disclosures, and thereby strike the expert designation of William E. Woodruff, Jr.  Defendant argues that Woodruff should not be permitted to testify as an expert witness because Plaintiffs failed to timely disclose Woodruff's identity as required by Rule 26(a)(2)(A) and failed to submit an expert report as required by Rule 26(a)(2)(B).

Plaintiffs hired Woodruff in December 2004 to attend a meeting with U.S. Xpress representatives.  However, Plaintiffs did not identify Woodruff as an expert, as required by Rule 26(a)(2)(A), until June 6, 2005, two days before the close of discovery.  Further, Plaintiffs did not submit a report for Woodruff as required by Rule 26(a)(2)(B).

Defendant argues that the Court should strike Woodruff as an expert witness as a sanction for Plaintiffs' failure to comply with Rule 26.  Rule 37(c) provides that a court may disallow the use of a witness at trial when a party "without substantial justification" fails to disclose information pertaining to that witness, as required by Rule 26, unless the failure is harmless.   Fed. R. Civ. P. 37(c); Prieto v. Malgor, 361 F.3d 1313, 1318 (11th Cir. 2004).

Plaintiffs have failed to provide substantial justification for failing to submit Woodruff's report and delaying the disclosure of his identity as an expert.  Plaintiffs argue that they did not hire Woodruff until December 2004.  However, they provide no explanation for the six-month delay between the date Woodruff was hired and the date he was identified as an expert.  Instead, Plaintiffs appear to argue that their failure was harmless, since Defendant knew in December 2004 that Plaintiffs had hired Woodruff.

The Court finds, however, that Plaintiffs' complete failure to provide an expert report for Woodruff, and their eleventh-hour designation of Woodruff as an expert, prejudiced Defendant. Plaintiffs left Defendant only two days before the close of discovery to depose Woodruff. Moreover, once Woodruff was identified as an expert, Defendant was forbidden from deposing him before receiving the report.  See Rule 26(b)(4)(A).

Furthermore, the Court notes that Plaintiffs' counsel previously has been warned about its failure to comply with the disclosure requirements.  The Court admonished Plaintiffs' counsel in May 2004 and again in December 2004 to comply with Rule 26, and explained the importance of Rule 26 disclosure to them.  Despite the Court's efforts to ensure compliance with discovery procedures, however, Plaintiffs have failed to follow the Court's directions.

Because Plaintiffs' failure to provide a Rule 26 report for Woodruff prejudiced Defendant, and because the Court previously has apprised Plaintiffs of the importance of complying with Rule 26, Defendant's Motion to Quash [Doc. 109] is **GRANTED**.


**SO ORDERED** this 3rd day of February, 2006.



S/ C. Ashley Royal
C. ASHLEY ROYAL
United States District Judge

AEG/ssh

11