IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | |
|---|---|
| WES MORGAN and LESLIE MORGAN, | : : |
| Plaintiffs, | : 4:03-cv-88 (CAR) : |
| v. | : : |
| U.S. XPRESS, INC., | : : |
| Defendant. | : |

*ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

Before the Court is Defendant's Motion for Summary Judgment [Doc. 114]. Plaintiffs filed a Response to the motion [Doc. 147], and Defendant filed a Reply [Doc. 152]. After obtaining leave of Court, Plaintiffs filed a Surreply [Doc. 157]. Defendant also filed a Motion for Hearing on their Motion for Summary Judgment [Doc. 154]. Because the Court finds it unnecessary to hold a hearing on Defendant's Motion for Summary Judgment, Defendant's Motion for Hearing [Doc. 154] is **DENIED**. Likewise, for the reasons discussed below, Defendant's Motion for Summary Judgment [Doc. 114] is **DENIED**.

*SUMMARY JUDGMENT STANDARD*

Rule 56 of the Federal Rules of Civil procedure mandates the entry of summary judgment if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). However, not all factual disputes render summary judgment inappropriate; only a genuine issue of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247-48 (1986).  Therefore, summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict.  See id. at 249-52.  In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence.  See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Burton v. Tampa Hous. Auth., 271 F.3d 1274, 1277 (11th Cir. 2001).

While the court is to view all evidence and factual inferences in a light most favorable to the nonmoving party, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson, 477 U.S. at 248 (emphasis added).  A fact is material when it is identified by the controlling substantive law as an essential element of the nonmoving party's case.  Id.  An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  Id.  An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative."  Id.  Thus, to survive a motion for summary judgment, the nonmoving party must come forward with specific evidence of every "essential element of her case with respect to which she has the burden of proof."  Celotex Corp., 477 U.S. at 323; McCaleb v. A.O. Smith Corp., 200 F.3d 747, 752 (11th Cir. 2000).

## BACKGROUND

This case involves a motor vehicle accident that occurred on February 11, 2003, near the intersection of Georgia Highway 22/80 and Shipp Road in Talbot County, Georgia. Plaintiffs and Defendant offer entirely different theories concerning how the accident occurred.

According to Plaintiffs, the accident occurred when a U.S. Xpress tractor-trailer pulled out from the shoulder of the road and turned sharply in front of Wes Morgan's semi-oil tanker. Wes Morgan veered to the right shoulder of the road to avoid hitting the truck, but in the process lost control of his oil tanker. The oil tanker flipped over, and Wes Morgan was ejected from the cab. The driver of the tractor-trailer fled the scene before police arrived.

Due to his life-threatening injuries, Wes Morgan did not identify the culprit vehicle immediately following the accident. However, he later described the truck as having a "candy apple red" cab and a white, off-white, or beige box trailer. No other eyewitnesses came forward in the weeks following the accident. Nearly two months after the accident, however, Rilla Biggs Williamson identified herself as a witness to the accident. Ms. Williamson lives on the corner of Georgia Highway 22/80 and Shipp Road, where the accident occurred. Ms. Williamson testified that on the morning of the accident, she heard a commotion and looked out of her bedroom window to see a red and white tractor-trailer truck speeding away. Ms. Williamson made out the word "U.S." written on the trailer "followed by some other letters."

U.S. Xpress argues that the accident was a single-vehicle accident involving only Wes Morgan. It bases its argument on the results of a police investigation, which found no physical evidence of a second vehicle, and no eyewitnesses to the accident.[1] In the alternative, U.S.

---

[1] The investigating officers initially gave sworn statements about their findings. After reviewing additional evidence, including the statement of a previously unknown witness and photographs of the scene of the accident, however, the officers retracted their statements, and now opine that the accident was not a single-vehicle accident. The Talbot County Sheriff, Bill Johnson, also reviewed the evidence, and has opened a criminal

Xpress argues that if a second vehicle <u>was</u> involved in the accident, it was not a U.S. Xpress truck. The company claims that several other commercial motor carriers have tractor-trailers fitting the description given by Plaintiffs. It further claims that even if the trailer involved in the accident bore the name "U.S. Xpress Enterprises," the tractor pulling that trailer may not have belonged to U.S. Xpress, since the company participates in a trailer interchange program. Under that program, other motor carriers pull U.S. Xpress trailers for various hauling purposes.

Through the course of discovery, the Plaintiffs sought information that would enable them to identify the U.S. Xpress truck they claim was involved in the accident. Plaintiffs obtained the driver logs of U.S. Xpress drivers for the day of the accident. The logs of two drivers suggest that those drivers could have been in Talbot County on the date of the accident. Both drivers, however, deny traveling through Geneva on the morning of February 11, 2003, and deny being involved in the accident.

To further pinpoint the drivers' locations, and to identify other drivers that may have been traveling through Geneva, Georgia, on the morning of the accident, Plaintiffs sought satellite positioning data maintained by U.S. Xpress on its internal computer system. U.S. Xpress declined to produce the data, claiming that any satellite positioning data recorded on its system on the date of the accident would have been routinely purged fourteen days later, and therefore was unavailable when the Plaintiffs notified U.S. Xpress of the accident in May 2003. Plaintiffs now claim to have discovered that the data remained in the U.S. Xpress computer system for more than 14 days, and that it was backed-up to a monthly back up tape. This tape was apparently destroyed in 2004, well-after the litigation was underway, and contrary to the

---

investigation into the matter.

company's data retention policy.

Plaintiffs also claim that U.S. Xpress failed to produce requested fuel tax data, which it maintained in compliance with its obligations under the International Fuel Tax Agreement ("IFTA"). U.S. Xpress claims that it attempted to respond to Plaintiffs' requests to the best of its ability, and that it does not possess most of the information it failed to disclose.

## *DISCUSSION*

To survive the present motion for summary judgment, Plaintiffs must point to specific evidence giving rise to a triable issue of fact as to whether (1) U.S. Xpress owned the tractor-truck that allegedly forced Wes Morgan's vehicle off of the road; and (2) the driver of the tractor-truck was an employee or agent of U.S. Xpress acting in the course and scope of his employment. Sellers v. Air Therm. Co., 231 Ga. App. 305, 308, 495 S.E.2d 167, 169 (Ct. App. 1998). U.S. Xpress argues that it is entitled to summary judgment because Plaintiffs' evidence identifying the culprit vehicle is insufficient to prove that U.S. Xpress owned the tractor-truck involved in the accident, or that the truck was operated by an agent or employee of U.S. Xpress in the course and scope of his employment.

In support of its argument, U.S. Xpress points to a long line of Georgia Court of Appeals cases holding that a witness's identification of a defendant's distinctive insignia on the culprit vehicle in a hit-and-run case is insufficient to establish ownership of the vehicle or agency of the driver. Burns v. United Parcel Serv., Inc., 135 Ga. App. 890, 890, 219 S.E.2d 624, 625 (Ct. App. 1975); accord Sellers, 231 Ga. App. at 308, 498 S.E.2d at 169; Loudermilk Enters. v. Hurtig, 214 Ga. App. 746, 748, 449 S.E.2d 141, 143 (Ct. App. 1994) (recognizing that witness testimony that the culprit vehicle bore defendant's insignia, standing alone, is insufficient to raise an inference

of ownership or agency); McCoy v. S. Bell Tel. & Tel. Co., 172 Ga. App. 26, 27, 322 S.E.2d 76, 77 (Ct. App. 1984); Studsill v. Am. Oil Co., 139 Ga. App. 54, 54-55, 228 S.E.2d 8, 8 (Ct. App. 1976) (holding police officer's reference to the culprit vehicle as defendant's vehicle insufficient to authorize inferences of ownership or agency). In those cases, however, the witness's identification was the only evidence produced by the plaintiffs. In this case, by contrast, the Plaintiffs have presented additional evidence to support their claim that a U.S. Xpress truck caused the accident. This evidence, when coupled with the adverse inference that may be drawn from U.S. Xpress's possible spoliation of evidence, raises a genuine issue of material fact and allows Plaintiffs to avoid summary judgment.

**II.     Additional Evidence**

The evidence regarding U.S. Xpress driver itineraries is additional evidence which, when considered with the adverse inference from the destruction of satellite tracking data, could support a finding that a U.S. Xpress truck was involved in the accident. Plaintiffs have produced evidence that two U.S. Xpress drivers had itineraries placing them in Talbot County at or around the time of the accident. Plaintiffs have produced the logs of those drivers, which show their initial and final destinations. They also have mapped the drivers' routes using Rand McNally— the service U.S. Xpress uses to map driver routes and calculate mileage—and have calculated the estimated travel times for the drivers' trips. Plaintiffs have even called into question the accuracy of the times reported on the drivers' logs. Even though both drivers denied traveling through Geneva, Georgia, on the date of the accident, a reasonable jury could discredit their testimony.

For instance, one of the two drivers, Rodney Morgan, was scheduled to travel from

Browns, Alabama, to Statesboro, Georgia.  The route recommended by Rand McNally would have taken Rodney Morgan through Geneva, Georgia.  Rodney Morgan, however, testified that he did not travel the Rand McNally route, but instead traveled from Browns, Alabama, to Atlanta, Georgia, then to Statesboro, Georgia.  Rodney Morgan's hand-written driver's log adds to the uncertainty about the route he traveled.  It indicates that he left Browns, Alabama, at 6:30 a.m. and arrived in Statesboro, Georgia, at 11:30 a.m.  Traveling either route, Rodney Morgan would have averaged between 82 and 87 miles per hour in a truck with a 70 mile per hour governor to have arrived in Statesboro at the time indicated on his log.  A jury could discredit Rodney Morgan's testimony that he traveled through Atlanta and find that Rodney Morgan's driver's log does not accurately reflect his travel time.

Likewise, another U.S. Xpress driver, Michael Wright, was scheduled to travel from Adel, Georgia, to Thomaston, Georgia, on the date of the accident.  Hubometer readings taken from Mr. Wright's truck indicate that he traveled 43 additional (and unaccounted-for) miles in his trip.  Plaintiffs theorize that Mr. Wright missed a turn in Butler, Georgia, and ended up in Geneva, Georgia.  According to Plaintiffs, after reaching Geneva and realizing his mistake, Mr. Wright turned around in the intersection of Highway 22 and Shipp Road, thereby running Mr. Morgan's oil tanker off of the road.  Geneva is 22 miles from Butler, and Plaintiffs suggest that the 43 additional and unaccounted-for miles Mr. Wright traveled are explained by their theory.

### III.  Adverse Inference from Missing Satellite Positioning Data

The satellite positioning data recorded by U.S. Xpress computers on the date of the accident would have been important evidence as to the location of Rodney Morgan's and

Michael Wright's trucks on the date of the accident. This evidence could have verified or cast doubt on Rodney Morgan's claim that he did not travel the Rand McNally route on the date of the accident, and could have shed some light on the 43 additional miles Michael Wright traveled in his route. As discussed below, it is unclear exactly when and why the satellite tracking data was removed from the U.S. Xpress computer system. In light of the questionable circumstances surrounding the destruction of this data, a reasonable jury could infer that the data was destroyed to eliminate evidence that could place Rodney Morgan, Michael Wright, or another U.S. Xpress driver at or near the scene of the accident.

Federal law governs spoliation issues in a diversity suit. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 944 (11th Cir. 2005). In the Eleventh Circuit, when a defendant destroys critical evidence, an adverse inference may be drawn from his failure to preserve the evidence if the absence of that evidence is predicated on bad faith. Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir. 1997). "Mere negligence in losing or destroying the evidence is not enough for an adverse inference as 'it does not sustain an inference of consciousness of a weak case.'" Id. (quoting Vick v. Tex. Employment Comm'n, 514 F.2d 734, 737 (5th Cir. 1975)). Recently, the Eleventh Circuit recognized that a showing of malice is not required to find bad faith. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 946 (11th Cir. 2005). See also Bridgestone/Firestone N. Am. Tire, L.L.C. v. Campbell, 258 Ga. App. 767, 574 S.E.2d 923 (Ga. Ct. App. 2003).

In this case, the circumstances surrounding the removal of the satellite positioning data from U.S. Xpress's computer system are questionable. Plaintiffs and Defendant offer divergent explanations as to how long the data was available on the U.S. Xpress computer system, whether the data was saved to a back up tape, and the motivation behind the destruction of that tape. The

Court previously heard two days of testimony from various expert and fact witnesses concerning the removal of the data from the U.S. Xpress computer system and the destruction of the February 2003 back up tape.  After carefully considering all of the evidence presented at that hearing, the Court concluded that there are genuine issues of material fact surrounding the destruction of the satellite positioning data.  These factual disputes give the Plaintiffs the benefit of the adverse inference to be drawn from the missing data for the purposes of summary judgment and render summary judgment inappropriate in this case.  <u>Stanton v. Nat'l R.R. Passenger Corp.</u>, 849 F. Supp. 1524, 1528 (M.D. Ala. 1994).  At trial, there will be a question of fact as to the circumstances surrounding the destruction of the data.

     Specifically, there is a genuine issue of fact concerning the availability of the data on the U.S. Xpress computer system after fourteen days, the retention of such data on back up tapes and defendant's motivation in destroying those tapes.  Defendant claims that data was routinely purged after fourteen days; however, Plaintiffs have produced witnesses who claim to have accessed satellite positioning data that was more than fourteen days old from U.S. Xpress's computer system during the relevant time period.  In addition, Defendant claims that the satellite positioning data was not saved to monthly back up tapes, but Plaintiffs have produced witnesses who have testified to the contrary.  Finally, Defendant testified that back-up tapes were supposed to be stored for two years before being written over, and yet the tapes that would have contained the relevant data were written over well in advance of this time.  Though Defendant has offered evidence showing that it shortened the retention period from two years to one year in the latter part of 2003, this evidence fails to explain why the February 2003 back up tape was not preserved after U.S. Xpress learned of the lawsuit in May 2003.  A jury must resolve these

factual conflicts.

The adverse inference that renders summary judgment inappropriate in this case does not relieve the Plaintiffs of their obligation to meet their burden of proof at trial.  C.A. La Seguridad v. Delta Steamship Lines, 721 F.2d 322, 325 (11th Cir. 1983); 29 Am. Jur. 2d Evidence § 244 (1994).  Even if the Plaintiffs establish that the destruction of the back-up tapes was predicated on bad faith, the Plaintiffs will still have to prove by a preponderance of the evidence that the culprit vehicle was owned by U.S. Xpress and operated by an agent or employee of U.S. Xpress in the course and scope of his employment.  From the destruction of these tapes, the adverse inference rule permits only an inference that the tapes would have contained relevant and potentially damaging information, not that a U.S. Xpress truck and driver were, in fact, responsible for the accident.  29 Am. Jur. 2d Evidence § 244 (1994) ("From the doctor's alteration of a hospital record, the doctrine of spoliation only gave rise to the inference that the record previously stated that the patient's knee was burned, not ulcerated, and not that the knee was, in fact, burned.").

**IV.     Adverse Inference from Non-Production of IFTA Data**

Plaintiffs also claim that they are entitled to an adverse inference from Defendant's failure to produce certain fuel tax data.  Plaintiffs requested this data on July 26, 2005, in its Fifth Request for Production of Documents.  Defendant responded to Plaintiffs' request on August 26, 2005, and produced much of the requested information.  However, Defendant failed to produce several items of data requested by Plaintiffs.[2]  Defendant explains that the data items

---

[2] More precisely, Defendant failed to produce (1) the ending date of each trip, (2) the route of travel for each trip, (3) the beginning and ending odometer reading, (4) the name of the driver, (5) the time of day associated with the starting and ending of each trip, and (6) intermediate trip stops.

it failed to produce required additional programming to retrieve, or were not captured in its computer system.

After receiving Defendant's responses, Plaintiffs did not seek the Court's intervention in obtaining the missing information. Instead, Plaintiff raised the issue for the first time in its Response to Defendant's Motion for Summary Judgment, filed on September 27, 2005. In its brief, Plaintiffs argued they were entitled to an adverse inference from Defendant's failure to respond fully to their request for production.

Affording Plaintiffs an adverse inference from Defendant's failure to fully respond to its discovery request is inappropriate at this time. This discovery dispute likely could have been resolved through a teleconference before Plaintiffs filed their Response brief, and may still be resolved prior to trial. The parties are instructed to confer and attempt to resolve this dispute prior to trial and, if they are unable to do so on their own, to contact the Court to set up a teleconference.

## *CONCLUSION*

For the reasons discussed above, Defendant's Motion for Summary Judgment [Doc. 114] is **DENIED**, and Defendant's Motion for Hearing [Doc. 154] is **DENIED**.

**SO ORDERED**. This 2nd day of June, 2006.

S/ C. Ashley Royal  
C. ASHLEY ROYAL  
UNITED STATES DISTRICT JUDGE

AEG/ssh